UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of<br><br>MERUELO MADDUX PROPERTIES, INC.,<br>et al.,<br><br>    Debtors-in-Possession. | CV 10-3536-SVW<br><br>Bkr. Case No. 1:09-bk-13356-KT<br>[Chapter 11]<br><br>Adv. Case No. 1:10-ap-01165-KT |
| COUNTY OF LOS ANGELES TAX<br>COLLECTOR,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, N.A.; MERCO<br>GROUP - SOUTHPARK, LLC; and<br>MERUELO MADDUX PROPERTIES - 760<br>S. HILL STREET, LLC,<br><br>    Defendants. | ORDER GRANTING MOTION TO<br>WITHDRAW THE REFERENCE TO THE<br>BANKRUPTCY COURT [1] |

**I.   BACKGROUND**

The underlying bankruptcy case involves a chapter 11 petition filed by the owner of commercial properties in downtown Los Angeles,

Meruelo Maddux Properties Inc.[1]  The present Motion to Withdraw the Reference involves an adversary dispute between two of Meruelo Maddux's creditors: Bank of America (which loaned money to Meruelo Maddux and holds a first deed of trust on the property at issue in this case) and the County of Los Angeles Tax Collector (which is owed taxes from Meruelo Maddux for the years of 2008-09).

Bank of America seeks to withdraw the reference to the Bankruptcy Court on two grounds: first, under the mandatory withdrawal doctrine because the case implicates significant questions of federal laws involving commerce, and second, under the permissive withdrawal doctrine because the equitable factors weigh in Bank of America's favor.

**II.  FACTS ALLEGED IN ADVERSARY COMPLAINT**

The adversary proceeding is brought by the County of Los Angeles Tax Collector against three separate defendants: Merco Group - Southpark, LLC ("Merco Group (Southpark)"); Meruelo Maddux Properties - 760 S. Hill Street, LLC ("Meruelo Maddux (Hill Street)"); and Bank of America.  Merco Group (Southpark) and Meruelo Maddux (Hill Street) are debtors in the underlying chapter 11 proceedings, and the County Tax Collector and Bank of America are creditors in those proceedings.

The County Tax Collector alleges that it is owed approximately $6.5 million in unpaid property taxes from properties owned by various

---

[1] Meruelo Maddux Properties claims to be the largest non-government landowner in downtown Los Angeles, as it owns approximately 80 acres of residential, commercial, light industrial, and mixed-use properties.  Meruelo Maddux Properties and 53 related entities filed for chapter 11 bankruptcy in March 2009.  The present dispute involves only two of those 53 related entities.

2

Meruelo Maddux Properties entities (which include two of the current defendants, Merco Group (Southpark) and Meruelo Maddux (Hill Street)). The County Tax Collector objected to the chapter 11 reorganization plan filed in late 2009 by Meruelo Maddux Merco Group (Southpark) and Meruelo Maddux (Hill Street), on the ground that the Plan and related Disclosure Statement did not correctly account for the County Tax Collector's tax claim. In January 2010, the County Tax Collector objected to the Disclosure Statement, and Merco Group (Southpark) and Meruelo Maddux (Hill Street) then sought a determination from the Bankruptcy Court that the County Tax Collector's tax claim was improper. In March 2010, the County Tax Collector and the debtors (Merco Group (Southpark) and Meruelo Maddux (Hill Street)) reached a preliminary settlement of their dispute over the County Tax Collector's claim for unpaid taxes.

In April 2010, Bank of America objected to the proposed settlement between the County Tax Collector and Merco Group (Southpark) and Meruelo Maddux (Hill Street). Bank of America's current objections are targeted at the proposed settlement's provision that the County Tax Collector may **only** accept tax payments (up until the time that the reorganization Plan is confirmed) from the debtors Merco Group (Southpark) and Meruelo Maddux (Hill Street). Bank of America asserts that this provision improperly interferes with Bank of America's rights under its loan agreements with Merco Group (Southpark) and Meruelo Maddux (Hill Street), which give Bank of America the right to pay its mortgagor's tax deficiencies and thereby redeem the collateral property

in that amount.[2]

During Bankruptcy Court proceedings, Bank of America tendered payment of about $840,000 to account for the tax deficiencies arising out of the properties on which Bank of America holds first deeds of trust (and out of an abundance of caution, Bank of America tendered more than the amount of the deficiency and is now seeking a partial refund). The County Tax Collector then filed the instant declaratory relief action to obtain a declaration that it has not accepted Bank of America's tender of the tax deficiency. Bank of America then filed a cross complaint seeking a declaration that it has a legal right to make the tax payment and/or that the County Tax Collector's refusal to accept Bank of America's tender of the tax payment constitutes a waiver of the County Tax Collector's right to a tax lien and/or that the tax lien should be equitably subordinated to Bank of America's bankruptcy claim.

Bank of America now seeks to withdraw the reference to the Bankruptcy Court. Bank of America's basic argument is that "the County [Tax Collector]'s attempt to reject [Bank of America]'s property tax payments is an interference with [Bank of America]'s contractual and state law rights to [t]ender such payments and implicates federal banking regulations, making the Adversary Proceeding the appropriate subject of withdrawal pursuant to 28 U.S.C. § 157(d)." (Mot. at 7.)

---

[2] It appears that the practical effect of the proposed settlement is that the County would (1) vote for the debtors' reorganization plan and (2) reduce the amount of taxes sought by the County, in exchange for (3) the withdrawal of the debtors' objection to the tax claim. As a result, the County would be guaranteed to receive certain amounts of the tax delinquency and the debtors would be guaranteed to retain their property and would be guaranteed to receive a certain number of votes in favor of the reorganization plan.

4

As stated more precisely in the Reply, Bank of America explained that County Tax Collector's "specific act of precluding [Bank of America] from making tax payments and utilizing covenants in its loan documents violates federal statutes and regulations." (Reply at 7-8.) Or, as stated in the supplemental briefing submitted on June 28, 2010, "[t]ranslated into federal preemption parlance, the Adversary Proceeding involves a state agency attempting to curtail a national bank's rights, under specific federal statutes and regulations to ensure the security of its collateral." (Supp. Brief at 1.)

**III. LEGAL STANDARDS**

As a general matter, all bankruptcy cases are referred to the Bankruptcy Court. See 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."); C.D. Cal. General Order 266 (referring to bankruptcy judges "all cases under Title 11 and all proceedings under Title 11 or arising in or related to a case under Title 11 pursuant to 28 U.S.C. 157(a)"). However, the reference to the Bankruptcy Court may be withdrawn in certain circumstances. The relevant statute provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States

5

```
                    regulating organizations or activities affecting interstate
                    commerce.
```
28 U.S.C. § 157(d).  The statute thus sets forth two separate standards: permissive withdrawal (also known as "discretionary" withdrawal) is allowed "for cause shown," and mandatory withdrawal is required if the case materially and substantially involves interpretation of "other [non-bankruptcy] laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

The party seeking withdrawal bears the burden of persuading the Court that withdrawal is appropriate.  In re Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir. 1996) (citing In re Michigan Real Estate Ins. Trust, 87 B.R. 447, 459 (E.D. Mich. 1988) (collecting cases)); In re First Alliance Mortgage Co., 282 B.R. 894, 902 (C.D. Cal. 2001).

The language of the statute is open-ended, and, read literally, the mandatory withdrawal provision would apply in almost all complex bankruptcies.  Accordingly, the courts have read mandatory withdrawal provision narrowly so that it does not become an "'escape hatch' by which bankruptcy matters could easily be removed to the district court."  In re Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir. 1996).  Specifically, the courts have interpreted the statute as mandating withdrawal only if it involves "substantial and material questions of federal law."  Security Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehouseman & Helpers, 124 F.3d 999, 1008 n.4 (9th Cir. 1997); see also Vicars Ins., 96 F.3d at 952-53 (adopting "substantial and material" standard); In re Ionosphere Clubs, Inc., 922 F.2d 984, 994-95 (2d Cir. 1990) (same), *cert. denied*, 502 U.S. 808 (1991).

The courts have also provided guidance regarding the statute's "cause shown" standard for permissive withdrawal. To guide the Court's discretion in deciding whether to grant permissive withdrawal, the Ninth Circuit has explained that, "[i]n determining whether cause exists, a district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Security Farms, 124 F.3d at 1008 (citing In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993)).

**IV.   MANDATORY WITHDRAWAL**

As noted *supra*, there are two essential elements for mandatory withdrawal under 28 U.S.C. § 157(d): first, the case must implicate issues of non-bankruptcy federal laws "regulating organizations or activities affecting interstate commerce," and second, theses issues must be "substantial and material."

**A.   Bank of America's Arguments Involve Laws Affecting Interstate Commerce**

In the present case, there is little doubt that Bank of America's arguments implicate federal laws that "regulat[e] organizations or activities affecting interstate commerce." In one of the seminal Supreme Court cases, McCulloch v. Maryland, 17 U.S. 316, 407, 411 (1819), the Court explained that the Constitution empowered Congress to charter a national bank as part of its power to regulate interstate and foreign commerce.[3]  The short-lived Bank of the United States addressed

---

[3] In full, the Court explained that Congress's power to charter a bank flowed from its powers to "to lay and collect taxes; to borrow money; to regulate commerce; to declare and conduct a war; and to raise and

7

in McCulloch has subsequently been replaced by the privately-owned federal banks chartered under the National Bank Act of 1864, 12 U.S.C. § 1 *et seq.* See generally Watters v. Wachovia Bank, N.A., 550 U.S. 1 (2007) (discussing history of federal banks).  More recently, the Supreme Court has noted that these federally chartered banks are "federal instrumentalities t[hat] perform various functions such as providing circulating medium and government credit, as well as **financing commerce** and acting as private depositaries." Franklin Nat. Bank of Franklin Square v. New York, 347 U.S. 373, 375 (1954) (emphasis added).

Bank of America is one such federal bank chartered under 12 U.S.C. § 21, and which exercises the powers enumerated by 12 U.S.C. § 24. Thus, to the extent that Bank of America argues that the County Tax Collector's actions are preempted by the National Bank Act, Bank of America has presented legal issues that involve federal "laws regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).  The County's bald assertion to the contrary is unavailing.  (See County Opp. at 17-18.)

**B. Bank of America's Arguments Present Substantial and Material Questions Under the National Bank Act**

A federal issue is "substantial and material" sufficient to justify mandatory withdrawal if it requires something more that the "routine application" of the non-bankruptcy federal laws. Ionosphere Clubs, 922 F.2d at 995; see also In re White Motor Corp., 42 B.R. 693 (N.D. Ohio 1984) (seminal case examining mandatory withdrawal).  "[T]he issues in question [must] require more than the mere application of

---

support armies and navies." McCulloch, 17 U.S. at 407.

well-settled or 'hornbook' non-bankruptcy law; 'significant interpretation' of the non-[Bankruptcy] Code statute must be required." <u>Vicars Ins.</u>, 96 F.3d at 953 (citation omitted). As synthesized by the Seventh Circuit, "mandatory withdrawal is required only when those issues require the interpretation, as opposed to mere application, of the non-title 11 statute, or when the court must undertake analysis of significant open and unresolved issues regarding the non-title 11 law. The legal questions involved need not be of 'cosmic proportions,' but must involve more than mere application of existing law to new facts." <u>Id.</u> at 954 (citation omitted).

Under this standard, withdrawal is required where there is a question of first impression. E.g., <u>In re Cablevision S.A.</u>, 315 B.R. 818 (S.D.N.Y. 2004) (question of first impression regarding intersection between Williams Act, Trust Indenture Act, and foreign insolvency proceedings); <u>In re Oil Co., Inc.</u>, 140 B.R. 30, 35 (E.D.N.Y. 1992) (question of first impression under Tax Code); <u>In re Chateaugay Corp.</u>, 108 B.R. 27, 28-29 (S.D.N.Y. 1989) (question of first impression under ERISA); <u>see generally</u> <u>In re C-TC 9th Ave. Partnership</u>, 177 B.R. 760 (N.D.N.Y. 1995) (noting that previous cases involved "issues of first impression under a relatively new, complex, and recently amended statutes, and for this reason, mandatory withdrawal was granted") (collecting cases). Withdrawal is also required if there is meaningful analysis and consideration of a non-bankruptcy federal commerce law, even in the absence of a question of first impression. E.g., <u>In re Dana Corp.</u>, 379 B.R. 449, 457-59 (S.D.N.Y. 2007) (application of joint and several liability under Comprehensive Environmental Response, Compensation, and Liability Act required "intensely factual" analysis

under complex statute); Mishkin v. Ageloff, 220 B.R. 784, 797 (S.D.N.Y. 1998) (case required analysis of conflicting cases regarding pleading standards under Private Securities Litigation Reform Act); In re McCrory Corp., 160 B.R. 502, 505-06 (S.D.N.Y. 1993) (case required application of Lanham Act, and "[i]nterpreting Lanham Act provisions to a given set of facts is, generally, neither simple nor straightforward"); In re St. Mary Hosp., 115 B.R. 495, 497-98 (E.D. Pa. 1990) (case required analysis and examination of Medicare statute).  On the other hand, withdrawal is inappropriate if the disputed legal issue has been clearly addressed by other federal courts or requires a simple application of existing precedent.  E.g., Vicars Ins., 96 F.3d at 954-55 (numerous district courts had addressed issue of whether party could be liable for aiding and abetting a violation of the Racketeer Influenced and Corrupt Organizations Act); Holland v. LTV Steel Co., Inc., 288 B.R. 770, 773-74 (N.D. Ohio 2002) (scope of Coal Industry Retiree Health Benefit Act of 1992 had been established at circuit and district level); In re Merryweather Importers, Inc., 179 B.R. 61, 62-63 (D. Md. 1995) (identical copyright issue had been resolved both at circuit level and in prior proceedings between the parties).

   In undertaking this inquiry, the Court must at least survey the merits of the movant's legal claims to determine whether they pose a substantial and debatable legal question.  See, e.g., Murphy v. County of Chemung, 410 B.R. 145, 149 (W.D.N.Y. 2009) (discussing applicable legal rules and concluding that movant's federal "claim is without any apparent merit"); Duhamel v. Turner, 334 B.R. 483 (D. Me. 2005) (examining movant's arguments in support of withdrawal and determining that they were irrelevant to the matters at issue in the adversary

proceeding). It should be emphasized, however, that the "issue before the Court is actually quite narrow: whether the circumstances for mandatory withdrawal under 28 U.S.C. § 157(d) are present." In re Cablevision S.A., 315 B.R. 818, 821 (S.D.N.Y. 2004). The Court need not – indeed, **cannot** – decide the merits of the parties' arguments. Instead, it must determine only whether there is a "substantial and material" question about non-bankruptcy law. Once that standard has been met, withdrawal is mandatory.

To give one recent example, the district court granted a mandatory withdrawal in Lubin v. Cincinnati Ins. Co., 411 B.R. 801 (N.D. Ga. 2009), a case involving the bankruptcy of a bank holding company. As part of the bankruptcy proceedings, the bankruptcy trustee brought an adversary proceeding asserting derivative claims against the bank's directors and officers. The Federal Deposit Insurance Corporation, which had been appointed receiver of the failed bank subsidiary, intervened in the adversary proceeding and argued that it had exclusive standing to bring the derivative claims against the directors and officers pursuant to the Financial Institutions Reform Recovery and Enforcement Act. Id. at 804. The court granted the motion to withdraw the reference because the Federal Deposit Insurance Corporation's arguments about standing required a "substantial and material consideration" of the Financial Institutions Reform Recovery and Enforcement Act. Id. The relevant questions required a careful examination of the complaint and resolution of a legal question that had not yet been addressed in that circuit. See generally Lubin, Nos. 10-10011, 10-10068, 2010 U.S. App. LEXIS 12140 (11th Cir. June 14, 2010) (affirming district court's merits decision). In granting the

motion to withdraw the reference, the district court simply noted the existence of the unanswered legal question; having established that much, withdrawal was required. Lubin, 411 B.R. at 804.[4]

Here, Bank of America's argument is that the County Tax Collector's actions impair Bank of America's rights under its contracts with Meruelo Maddux. Bank of America points out that, as a national bank, it is statutorily authorized "[t]o make contracts," 12 U.S.C. § 24(3), to "make, arrange, purchase or sell loans or extensions of credit secured by liens on interests in real estate," 12 U.S.C. § 371(a), and to "exercise . . . all such incidental powers as shall be necessary to carry on the business of banking," 12 U.S.C. § 24(7).[5] Bank of America argues that the County Tax Collector's attempt to refuse Bank of America's tender of tax payments constitutes an impairment of Bank of America's federally authorized powers to make lending contracts related to real estate. See 12 U.S.C. § 24(3); 12 U.S.C. § 371(a). Further, the power to include covenants such as Bank

---

[4] Lubin also implicitly stands for the obvious proposition that federal banking laws such as the Financial Institutions Reform Recovery and Enforcement Act implicate commerce for purposes of 28 U.S.C. § 157(d) mandatory withdrawal. See supra Part IV.A.

[5] Bank of America also identifies four interpretive letters from the Office of Comptroller of Currency. One of these letters provides persuasive support for the seemingly common-sense proposition that Bank of America has the power to include covenants in its lending agreements, see OCC Interpretive Letter No. 956, 2003 WL 23221434 (Jan. 21, 2003).
   The other interpretive letters, however, are simply inapposite. See OCC Interpretive Letter, 1985 WL 151287 (June 12, 1985) (accounting treatment of national bank's payment of tax deficiency prior to foreclosure); OCC Interpretive Letter No. 717, 1996 WL 223689 (Mar. 22, 1996) (national bank's power to purchase as an investment an assignment of state's right to collect property taxes); OCC Interpretive Letter, 1983 WL 145844 (July 14, 1983) (national bank's power to act as real estate broker).

12

of America's covenant to pay tax deficiencies is an implied and incidental power that is part and parcel of the power to make contracts. See 12 U.S.C. § 24(7).

It is well-established that the National Bank Act preempts state laws. See, e.g., Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11-14 (2007). Of course, federally chartered banks remain subject to state laws of general application. As explained in First Nat. Bank v. Commonwealth of Kentucky, 76 U.S. 353 (1869), federal banks:

> are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law.

Id. at 362.

But states are prohibited from engaging in a wide variety of regulatory actions involving national banks. See generally 12 C.F.R. § 34.4 (listing categories of state laws relating to real estate lending that are and are not preempted by National Bank Act). For example, states are barred from imposing taxes directed at federal banks, see, e.g., McCulloch, 17 U.S. at 436, and from conducting bank examinations and inspections, 12 U.S.C. § 484(a); Cuomo v. Clearing House Ass'n, L.L.C., 129 S.Ct. 2710, 2714, 2721-22 (2009) (state may not threaten to issue subpoenas seeking non-public information about bank lending practices); Watters, 550 U.S. at 9-10, 20-21. In addition, the Supreme Court has held that states and local laws are preempted if they conflict with or "significantly impair" either the "enumerated

[or] incidental powers [of] national banks." <u>Watters</u>, 550 U.S. at 12 (citing <u>Barnett Bank of Marion County, N.A. v. Nelson</u>, 517 U.S. 25, 36-37, 42 (1996)).  Accordingly, the Supreme Court has held that local laws are preempted where they prohibited national banks from exercising their "incidental power" of selling insurance, see <u>Barnett Bank</u>, 517 U.S. at 36-37, 42; prohibited national banks from using the word "savings" in their advertisements, <u>Franklin Nat. Bank of Franklin Square v. New York</u>, 347 U.S. 373, 377-59 (1954); and banned national banks from engaging in mortgage lending if the banks fail to pay registration fees and submit to state inspections and reporting requirement, <u>Watters</u>, 550 U.S. at 9-10, 20-21.  Perhaps most relevantly, state laws were held preempted where they barred national banks from including "due on sale" clauses in their mortgage contracts, as such contract clauses were permitted under applicable federal regulations.  <u>Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta</u>, 458 U.S. 141, 158-159 (1982).

The County Tax Collector argues in its opposition that the preemption doctrine does not require the Court to **interpret** any federal laws, and further insists that mandatory withdrawal is only appropriate if the issue requires such **interpretation**.  (Opp. at 17 (citing <u>In re Roman Catholic Bishop of San Diego</u>, No. 07-1355, 2007 U.S. Dist. LEXIS 60954, at *3 (S.D. Cal. Aug. 20, 2007)).)  The County Tax Collector incorrectly relies on dicta that contradicts the clear statutory language of 28 U.S.C. § 157(d): the issue is not whether the Court must **interpret** federal law, but whether it must **consider** federal law.  See 28 U.S.C. § 157(d) (mandatory withdrawal required if action requires "consideration of both title 11 and other laws of the United States

14

1 regulating organizations or activities affecting interstate
2 commerce."); see also In re Vicars Ins. Agency, 96 F.3d at 953
3 (withdrawal is appropriate where case requires "interpretation" and
4 "analysis" – rather than "mere application" – of federal law).  In any
5 event, any decision regarding the National Bank Act's preemptive scope
6 necessarily obligates the Court to engage in the interpretation,
7 consideration, and analysis of a complex federal statue.
8    The County Tax Collector also suggests that the present case "does
9 not require complex interpretation of non-title 11 federal law.
10 Rather, this case requires simple application of well settled law and
11 therefore, mandatory withdrawal is not implicated in this case."
12 (County Opp. at 18.)  Tellingly, though, the County Tax Collector fails
13 to identify the "well settled law" that dictates the outcome of this
14 case.  (See id.)  Instead, the County simply argues that Bank of
15 America's arguments are "***utterly irrelevant***" and "***totally irrelevant*** to
16 the Adversary Proceeding."  (County Supp. Brief at 3, 5, emphasis in
17 original.)  The County Tax Collector repeatedly frames the dispute as
18 involving the question of "whether the County is obligated to accept a
19 tender of property taxes from a lender when the Debtor and the County
20 have entered into a Settlement Agreement whereby the County has agreed
21 to accept property tax payments solely from the Debtors."  (Id. at 4,
22 5, 6.)  The County Tax Collector simply ignores Bank of America's
23 argument that the Settlement Agreement impairs Bank of America's
24 ability to enforce its loan covenants.
25    A slightly stronger argument in opposition to Bank of America's
26 Motion to Withdraw the Reference is offered by Bank of America's co-
27 defendants in the adversary proceeding, Merco Group - Southpark, LLC,
28

and Meruelo Maddux Properties, 760 S. Hill Street, LLC. They explain that Bank of America "essentially argues that any time a national bank's loan to a debtor is affected by a proceeding in a bankruptcy court, withdrawal of the reference is mandatory because there is a federal statute that authorized the bank to make the loan to begin with. Of course, given the frequency with which 'national banks' are creditors in and affected by bankruptcy proceedings, [Bank of America] is essentially arguing that the vast majority of bankruptcy cases are subject to mandatory withdrawal and thus would need to be presided over by District Courts upon a party's request." (Merco Opp. at 6.) This argument, however, overlooks the essential fact presented in this case — Bank of America's motion is premised on the fact that a **county**, not a private business entity, is responsible for the impairment of Bank of America's federally-protected rights and powers. Because a state actor's actions are at issue, this is not a run-of-the-mill creditor-debtor issue; rather, it becomes a Constitutional issue requiring analysis of the National Bank Act and the Supremacy Clause.

Perhaps Bank of America's preemption argument is, as the Oppositions insist, frivolous and irrelevant. But none of the opposing parties have identified **any** authority supporting this assertion. (County Opp. at 18; Merco Opp. at 6-7; County Supp. Brief at 2-7; Merco Supp. Brief at 2-4.) And, as the Oppositions point out, neither has Bank of America identified any clear authority for **its** argument. (See Merco Opp. at 7-8; County Opp. at 6, 18.) Accordingly, the Court is compelled to conclude that Bank of America's argument presents a question of first impression, or at least a question that requires application of existing precedent in a novel factual scenario.

16

Preemption questions under the National Bank Act are rarely straightforward; in fact, in a three-year span the Supreme Court has been forced to addressed the issue on two separate occasions. Cuomo, 129 S.Ct. 2710; Watters, 550 U.S. 1; see generally James H. Pannabecker, Banking Law Journal Digest ¶ 21.15 (2010 supp.) (collecting cases from last ten years). Accordingly, Bank of America's arguments will require consideration of "substantial and material questions of federal law." Security Farms, 124 F.3d at 1008 n.4; 28 U.S.C. § 157(d). Mandatory withdrawal is therefore appropriate.

The Court is aware that this decision may have an adverse effect on the ongoing chapter 11 proceedings. The parties to that proceeding are moving toward agreement on a final reorganization plan. In light of the advanced stage of the bankruptcy proceedings, the Oppositions to the present motion focus extensively on the equities of the case and Bank of America's tactics before the Bankruptcy Court and in the present motion. (See County Opp. at 2-5, 8-14, 19-27; Merco Opp. at 2-5; see generally County Supp. Brief; Merco Supp. Brief.) But such considerations do not affect determinations of **mandatory** withdrawal under 28 U.S.C. § 157(d). This Court is statutorily required to grant Bank of America's motion, and it is legal error not to do so.[6] It may very well be true that Bank of America is forum-shopping; but Bank of America's Motion is clearly supported by the applicable legal authority, see 28 U.S.C. § 157(d), and the Oppositions have wholly failed to convince the Court otherwise. (See generally County Supp.

---

[6] Indeed, the Ninth Circuit has granted mandamus where a district court improperly withdrew a reference, see In re Canter, 299 F.3d 1150, 1153-55 (9th Cir. 2002), and there is no reason why it would not do the same if a district court improperly **refused** to withdraw a reference.

Brief; Merco Supp. Brief.)

It also should be noted that, although withdrawal of the reference may cause delay and confusion in the underlying bankruptcy proceedings, there are important reasons why Congress required withdrawal of the reference in certain cases. See In re Vicars Ins. Agency, 96 F.3d at 952-53. Most importantly, the clear inference is that Congress intended for difficult questions of non-bankruptcy federal law must be addressed by Article III courts rather than Bankruptcy Courts. Id.; see generally Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982); see also Alan N. Resnick & Henry J. Sommer, eds., 1 Collier on Bankruptcy ¶ 3.04[2] (16th ed. 2010 supp.).

**V.   PERMISSIVE WITHDRAWAL**

Because mandatory withdrawal is appropriate, it is unnecessary to address Bank of America's arguments regarding permissive withdrawal of the reference. Bank of America's Motion to Strike the County Tax Collector's late-filed Request for Judicial Notice is DENIED in light of the fact that the Request for Judicial Notice is relevant only to arguments regarding permissive withdrawal.

**VI.   CONCLUSION**

Bank of America identifies substantial issues regarding the preemptive effect of the National Bank Act. Neither party has identified clear authority that would compel an easy conclusion regarding Bank of America's arguments. Mandatory withdrawal is therefore necessary under 28 U.S.C. § 157(d).

///

18

1  The parties are ORDERED to appear for a status conference on June
2  30, 2010, at 1:30 p.m.
3
4  IT IS SO ORDERED.
5
6
7  DATED:  June 29, 2010
8                                           STEPHEN V. WILSON
9                                        UNITED STATES DISTRICT JUDGE